IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIM. NO. 19-392 |
| | : | |
| MALAN DOUMBIA | : | |

## DEFENDANT'S SENTENCING MEMORANDUM

Defendant Malan Doumbia, by and through his attorney, Gina A. Amoriello, Esquire hereby submits his Memorandum of Sentence in this matter.

### I. APPLICABLE GUIDELINE RANGE AND OBJECTIONS TO P.S.R.

The Probation Department concluded that an adjusted offense level of 39 applied to Mr. Doumbia. PSR at ¶55. Defendant objected to the initial calculation, and contended that the total offense level should be 11. Specifically, Defendant agrees that the base level is 7 pursuant to USSG §2B1.1(a)(1). Defendant also does not contest the addition of 2 levels for possessing device-making equipment pursuant to USSG §2B1.1(b)(11)(A)(i), nor the 2 levels for conviction under 18 U.S.C. §1956, resulting in an adjusted offense level of 11.[1]

### A. Objection to Fraud Loss Calculation

As reflected in the PSR for this case, 213,567 credit card numbers were confiscated from the homes/property of Souleymane Diarra, Malan Doumbia, and Souleymane Jallow. Mr. Doumbia was in possession of 970 card numbers, or 0.45% of all credit card numbers associated with the conspiracy.

[1] Based on the Court's prior ruling at the co-defendant's sentencing hearing, the loss amount was approximately $60,000, resulting in a base level of 13 plus an addition of 4 levels for adjusted level of 17.

For offenses involving fraud or theft, § 2B1.1 of the advisory Guidelines provides for an offense level enhancement based on the value of the "loss" attributable to the defendant's conduct. The defendant's base offense level, which is used to calculate a recommended range of imprisonment, increases as the loss resulting from the offense increases. *See* U.S.S.G. § 2B1.1(b)(1). The maximum increase is a 30-level enhancement for conduct resulting in a loss exceeding $550 million. *Id*. The Government bears the burden of establishing the amount of loss under § 2B1.1 by a preponderance of the evidence. *United States v. Free*, 839 F.3d 308, 319 (3d Cir. 2016); *United States v. Diallo*, 710 F.3d 147, 151 (3d Cir. 2013). But the Guidelines do not mandate that a district court find a loss amount of greater than $0. *Free*, 839 F.3d at 323 ("We agree with the proposition that the government is not entitled to a punitive loss calculation, even in cases involving fraud, absent evidence of actual or intended pecuniary loss.").

The Guidelines' commentary details how a district court should calculate the amount of loss. U.S.S.G. § 2B1.1 cmt. n.3. The general rule defines "loss" as "the greater of actual loss or intended loss." *Id.* at cmt. m. 3(A). Here, according to the PSR, five financial institutions claimed a total loss of $60,262.70 as a result of the defendants' fraudulent scheme. This Court is therefore required to calculate the intended loss, or "the pecuniary harm that the defendant purposely sought to inflict…" *Id*, at cmt. n.3(A)(ii), and then determine whether this amount is greater than the identified loss of $60,262.70. The Court has previously rejected this argument, relying on *United States v. Riccardi*, 989 F.3d 476 (6th Cir. 2021), which with the Third Circuit thereafter agreed in *United States v. Banks*, 55 F.4th 246 (3d Cir. 2022). However, the Government still needs to establish "actual" loss of $60,262.70 for this amount to apply to Mr. Doumbia.

**B. Objection to 2-Level Sentencing Enhancement Pursuant to § 2B1.1(b)(2)(A) Where There is No Evidence that the Offense Involved 10 or More Victims**

The Government seeks a sentencing enhancement under § 2B1.1(b)(2)(A) which provides for an enhancement if the offense conduct involves ten or more victims. There is simply no evidence to support the conclusion that ten or more victims were harmed by the defendants' conduct.

The Government must prove facts supporting a sentencing enhancement by a preponderance of the evidence. *United States v. Metro*, 883 F.3d 431 (3d Cir. 2018). While this standard of proof is not as exacting as the beyond a reasonable doubt standard, it does require the Government to point to evidence of record that would permit an inference that would support application of the standard. *See United States v. Wilson*, 788 F.3d 1298 (11th Cir. 2015) (the district court reasonably inferred that the 52 names on checks were associated with real people in its calculation of the number of victims at sentencing since the IRS would not issue a tax-refund check for a fictitious person).

According to the Sentencing Guidelines, a "victim" is defined as "any person who sustained any part of the actual loss determined under subsection (b)(1)." § 2B1.1 cmt n.1. Further, the definition of a person includes "individuals, corporations, companies, associations, firms, partnerships, societies, and joint stock companies." *Id.*

In its Sentencing Memorandum, the Government noted that co-defendant Mr. Diarra possessed the credit cards of 17 victims and Defendant Mr. Doumbia had possession of more than 1,000 card numbers in his home and 1,492 more in his phone. Accordingly, from this evidence it concludes that it has proven "conclusively" that there were more than ten victims in this case. Government's Sentencing Memorandum, p. 14.

In fact, however, the Government has proven no such thing, even by a preponderance of the evidence. Since the definition of a victim requires the Government to show that an

individual or corporation has sustained some actual loss, neither Defendants' possession of credit card numbers does not, standing alone, establish that these individuals victimized a certain number of people. First, there was no evidence introduced at trial, apart from evidence pertaining to the five named victims identified in the aggravated identity theft counts, that the credit card numbers were actual numbers associated with specific individuals and their credit card accounts. Further, there has been no evidence to show that these five individuals sustained any part of the actual loss associated with their credit card accounts. While the bar for establishing actual loss is not extremely high, *see United States v. Moreno,* 809 F.3d 766, 776 (3d Cir. 2016), ***some*** evidence is still required to show by a preponderance of the evidence that a person constitutes a victim in order for the sentencing enhancement to apply. Given the Government's failure at trial to connect all but five of the credit card numbers to real, non-fictitious individuals who were capable of sustaining some type of loss, there is no basis for the Government's claim that there were more than ten victims in this case. Accordingly, the defense urges this court to conclude that no sentencing enhancement pursuant to §2B1.1(B)(2)(a) is warranted.

**C. Objection to 2 Level Sentencing Enhancement Pursuant to § 2B1.1(b)(10)(B) for a Substantial Part of Scheme Outside of the United States**

As this Court is aware, this enhancement requires that "a substantial part of a fraudulent scheme was committed from outside the United States." Government Exhibit #110 is a summary of the wire transfers that are alleged to have transpired, with a total resulting in $11,989.86. The Government argues that the total loss is $107,550,361.00. Using its calculation, this figure is approximately 0.01%, which is by no means substantial. Therefore, this enhancement should not be applied.

## II. FACTORS TO BE CONSIDERED IN SENTENCING

In *Booker v. United States*, the Supreme Court found that the provisions of the Federal Sentencing Reform Act of 1984 making the Guidelines mandatory are incompatible with its Sixth Amendment holding. 543 U.S. 220, 244 (2005). Thus, instead of being bound by the Sentencing Guidelines, the Sentencing Reform Act, as revised by Booker, "requires a sentencing court to consider the Guideline's ranges, but it permits the Court to tailor the sentence in light of other statutory concerns as well" as articulated in 18 U.S.C. § 3553(a). Id. at 245-46 (citations omitted). Accordingly, under Booker, sentencing courts must treat the Guidelines as just one of a number of sentencing factors set forth in 18 U.S.C. § 3553(a).

In determining a sufficient sentence, § 3553(a) further directs sentencing courts to consider the following factors:

(1) "the nature and circumstances of the offense and the history and characteristics of the defendants," See 18 U.S.C. § 3553(a)(1);

(2) "the kinds of sentences available," see 18 U.SC. § 3553(a)(3);

(3) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." See 18 U.S.C. § 3553(a)(6); and

(4) "the need to provide restitution to any victims of the offense." See 18 U.S.C. § 3553(a)(7).

The primary directive in § 3553(a) is for sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purpose set forth in paragraph 2." Section 3553(a)(2) states that such purposes are:

(A) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) To afford adequate deterrence to criminal conduct;

(C) To protect the public from further crimes of the defendant; and

(D) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U..S.C. § 3553(a)(2).

Under the principles articulated in *United States v. Rita*, 127 S.Ct. 2456 (2007), this Court may make its own determination as to what factors to consider in addition to the advisory Sentencing Guidelines when sentencing a criminal defendant. The *Rita* decision held that district courts, when imposing a sentence, do not have to subordinate role to the Sentencing Commission, do not have to defer to the Commission's judgments and policy decisions, and can reach their own judgments regardless of whether they disagree with the Commission's position. *Id.* at 2463-64. A sentencing court may, for example, address arguments that the Guidelines "reflect an unsound judgment or…that they do not generally treat certain defendant characteristics in the proper way." *Id.* at 2468. The *Rita* Court even stated that, "[a]s far as the law is concerned, the [sentencing] judge could disregard the Guidelines" altogether. *Id.* at 2466.

Mr. Doumbia stands before this Court asking for leniency. He did not commit crimes "on a weekly, sometimes daily basis," as the Government contends in its memorandum at page 17. He is a good person who may have made a bad choice, as demonstrated by the character letters which are being submitted separately. He has also been on electronic monitoring for almost a year (as well as 6 months following arrest) and has been compliant. Further, Mr. Doumbia does suffer from a blood-clot disorder requiring daily medication.

## CONCLUSION

The Government argues that the applicable guideline range is 61 to 166 months imprisonment (by adding 24 months on the bottom number and 120 months on the top number), and asks this Court to sentence Mr. Doumbia to 111, "roughly in the middle." Govt. Sentencing Memo at page 3. Defendant contends that, if the Court accepts the argument that no amount of actual loss has been proven, the adjusted offense level would be 11, resulting in a guideline range of 8 to 14 months (32 to 134 months using the additions made by the Government). If this Court finds the actual loss figure of $60,000, as it applied to co-defendant Diarra's case, the adjusted level would 17, guideline range 24 to 30 months (or 48 to 150 months using the Government's additions).

Respectfully submitted,

*S/ Gina A. Amoriello*

_______________________________

GINA A. AMORIELLO, ESQUIRE
1515 Market St, Suite 1200
Philadelphia, PA 19102
(215) 389-3090
Counsel for Defendant Doumbia

DATED: February 15, 2023

**CERTIFICATE OF SERVICE**

I, GINA A. AMORIELLO, ESQUIRE, certify that on this 15th day of February, 2023, I have served a copy of this Sentencing Memorandum upon:

AUSA Robert Livermore
*Via Email*

S/ Gina A. Amoriello

GINA A. AMORIELLO
Attorney for Defendant